UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAKEMA A. HEMINGWAY,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civ. No. 19-18387 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Shakema Hemingway, brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") ceasing her Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons below, the decision is **VACATED** and the matter is **REMANDED**.

## I.  BACKGROUND[1]

### A.  Statutory Framework

To qualify for Title II DIB benefits, a claimant must show that she[2] is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment. 42 U.S.C. § 423(d)(1)(A). But the Commissioner may terminate a claimant's benefits if there has been medical

---

[1]  Citations to the record are abbreviated as follows:

"DE _" = Docket entry in this case

"R. _" = Administrative Record (DE 6) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 6 attachments)

"Def. Brf." = Defendant's Brief (DE 19)

[2]  Because Hemingway is female, I use female pronouns in this opinion to describe a generic claimant.

improvement related to her ability to work. 20 C.F.R. § 404.1594(a). A "medical improvement" is defined as

> any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [she] were disabled . . . . A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [her] impairment(s).

*Id.* § 404.1594(a)(1).

Regulations prescribe a multi-step evaluation process to determine whether to cease benefits based on medical improvement.[3] This process considers: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals the severity of a listed impairment; (3) whether there has been medical improvement in the claimant's condition; (4) whether the medical improvement is related to the claimant's ability to work; (5) whether any of the exceptions to medical improvement apply; (6) whether the claimant's current impairments in combination are severe; (7) whether the claimant has the current residual functional capacity ("RFC") to perform her past relevant work; and (8) if not, whether the claimant can perform any other work which exists in the national economy, given her age, education, work experience and current RFC. 20 C.F.R. § 404.1594(f)(1)–(8).

**B. This Case**

In a 2011 decision, Hemingway was found disabled and was awarded DIB from an onset date in 2009. (R. 91–94, 116.) The ALJ found that Hemingway had the severe impairment of affective disorder. (R. 90.)[4] In finding

---

[3] This analysis differs from the more commonly used five-step sequential evaluation process to determine disability in the first instance. *See generally Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007).

[4] The ALJ also found that Hemingway had a severe impairment of a shoulder injury and that this impairment also supported a finding of disability. (R. 90.) The shoulder injury was also one of the subjects of the decision now under review. Nonetheless, Hemingway's brief does not take issue with any of the ALJ's findings related to the shoulder injury. Accordingly, I do not consider it. *Khan v. Att'y Gen.*, 691

that Hemingway's affective disorder qualified as a disability, the ALJ weighed evidence that (1) she had recurrent depressive episodes; (2) she had, at times, experienced hallucinations and suicidal thoughts; and (3) she received treatment from Dr. Manfred Obi, who had diagnosed her with depressive disorder and reported a variety of symptoms. The ALJ acknowledged that Dr. Obi also reported that Ms. Hemingway, in her last visit prior to the ALJ decision, presented more normally, had no hallucinations and suicidal thoughts, and her prognosis was "fair" with treatment. (R. 91–92.) The ALJ gave Dr. Obi's reports "controlling weight" and found that his observations were consistent with Hemingway's own testimony. (R. 92.)

In 2015, the Social Security Administration conducted a continuing disability review and determined Hemingway was no longer disabled as of November 30, 2014. (R. 95–97, 104–09.) An ALJ reviewed the cessation decision and affirmed in 2019. (R. 12, 137–40.)

At step one of the eight-step analysis outlined above, the ALJ found that Hemingway had not engaged in substantial gainful activity. (R. 14.) At step two, the ALJ found that Hemingway currently had the mental impairments of depressive disorder, anxiety/panic disorder, borderline personality disorder, and post-traumatic stress disorder, but none met or equaled a listed impairment. (R. 14–18.)

At step three, the ALJ found that, by November 2014, there had been a decrease in the medical severity of the impairments found in the 2011 decision. (R. 18.) In making that finding, the ALJ relied on two key facts: (1) Hemingway's last psychiatric hospitalization was in 2013, and she had been in outpatient treatment with Dr. Obi since July 2014. (*Id.*) (2) Dr. Obi reported that her visits were irregular, she was non-compliant with treatment, and that if she were compliant, her prognosis would be "good." (R. 19.)

---

F.3d 488, 495 n.4 (3d Cir. 2012) (issues not raised in an opening brief are forfeited). I also note that the mental impairments and shoulder injury were analyzed separately in both decisions, so the shoulder injury analysis does not provide an alternative basis to affirm the ALJ decision under review.

In what appears to also be part of the step three analysis, or at least relevant to it, the ALJ also found that Hemingway's impairments decreased in severity such that her RFC improved. (*Id.*) The ALJ explained that he would consider the RFC for all Hemingway's mental impairments, even though some were not formally diagnosed until after the 2011 decision. (*Id.*) The ALJ based his RFC finding primarily on two things: (1) Hemingway was admitted into the hospital for substance abuse treatment in 2015, and at that time, she reported that she had not been taking her depression medication because she had not been feeling depressed. Additionally, the hospital reported that her mental health status was normal at discharge. (R. 21.) (2) Dr. Obi reported she had poor concentration, irritability, nightmares, flashback avoidance, angry outbursts, low energy, and distractibility. But Dr. Obi also reported that she had no hallucinations or suicidal thoughts, her prognosis was "good" if she was compliant with treatment, and she could perform some day-to-day activities. (R. 22.)[5]

For the remaining steps, the ALJ concluded that Hemingway's RFC had improved to the point that there were jobs within the national economy which she could perform. Accordingly, the ALJ found that she was no longer disabled as of November 2014. (R. 24–25.) Hemingway appeals.

## II. STANDARD OF REVIEW

For the purpose of this appeal, the Court conducts a plenary review of the legal issues, *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999), and must ensure the ALJ decision conforms with the regulations, 42 U.S.C. § 405(g). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the

---

[5] The ALJ also gave minimal weight to a few other parts of the record: (1) A consulting psychologist, Dr. Ernesto Perdomo, concurred in Hemingway's diagnoses and opined that she would have significant difficulties in functioning. But the ALJ explained that Perdomo's opinion was entitled to little weight because he did not "clarify to what extent [Hemingway] is affected." (R. 23.) (2) A state agency physician found no evidence of mental limitations, but her opinion was entitled to little weight because there was evidence of mental limitations. (R. 24.)

4

findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### III. DISCUSSION

I cannot affirm the ALJ decision ,because the ALJ's analysis of medical improvement at step three was flawed in two respects: (A) the ALJ did not adequately compare the record before him with the record supporting the 2011 decision; and (B) the ALJ did not address whether the evidence he relied on to find medical improvement showed only a temporary remission.

#### A. Adequate Comparison of the Records

The ALJ did not adequately compare the record before him with the record supporting the 2011 decision. The Third Circuit has explained that "[a] key part" of the analysis in continuing disability cases "involves comparing the severity of the impairment at the time of the most favorable recent disability determination with the current severity of that impairment." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307 (3d Cir. 2012) (citing 20 C.F.R. § 404.1594(b)(7), (c)(1)). This analysis necessarily involves "comparison of prior and current medical *evidence.*" 20 C.F.R. §§ 404,1594(c)(1), 416.994(c)(1) (emphasis added). Accordingly, courts have vacated ALJ decisions that did not adequately compare the record supporting a prior favorable decision with the current record. *E.g., Walters v. Saul*, 452 F. Supp. 3d 164, 177 (M.D. Pa. 2020), *report & recommendation adopted by* 2020 WL 1531369 (M.D. Pa. Mar. 31, 2020); *Thomas F. v. Comm'r, Soc. Sec. Admin.*, Civil No. DLB-19-820, 2020 WL 1443566, at *6 (D. Md. Mar. 24, 2020) (relying on *Hagans*); *Veino v. Barnhart*, 312 F.3d 578, 587 (2nd Cir. 2002).

Here, when reaching the conclusion on medical improvement, there was no comparison of the two records by the ALJ. (R. 17–18.) Indeed, the ALJ never cited the specific evidence underlying the prior decision. Instead, to find medical improvement, the ALJ relied on the facts that, since the 2011 decision, (1) Hemingway only had experienced one psychiatric hospitalization and (2) Dr. Obi had reported that she had a good prognosis, assuming compliance with treatment. Yet the ALJ did not consider how those facts compared to those before the ALJ who rendered the 2011 decision. Had the ALJ here done so, he would have noted that (1) the 2011 decision, too, cited just one psychiatric hospitalization (in 2007) to support its disability finding, and (2) Dr. Obi's prognosis was previously nearly identical to his current one. (R. 91–92.) The 2019 decision's complete omission of those facts and lack of any explanation of the difference between the two similar records makes it plain that the ALJ did not adequately engage in the comparison required in cases like these.

I recognize that "the ALJ's reasoning may be gathered from elsewhere in the decision," *Collado v. Comm'r of Soc. Sec.*, Civ. No. 19-13458, 2020 WL 5939793, at *4 (D.N.J. Oct. 6, 2020) (citations omitted), so I will also consider the discussion of evidence in the RFC section. This section, too, shows that more is needed. In finding that Hemingway's RFC improved, the ALJ primarily relied on (1) Hemingway's reported statement during a hospital visit that she had not been taking her depression medication because she had not been feeling depressed, and (2) Dr. Obi's prognosis, as well as his observation that Hemingway could perform some day-to-day activities. (R. 21–22.)[6]

In 2010, however, Dr. Obi *also* reported that Hemingway "could perform her activities of daily living" and that she had a fair prognosis with treatment. (R. 92.) In fact, his reports have been remarkably consistent, indeed, largely verbatim. (*Compare* R. 91–92, *with* R. 22.) For example, in both reports he stated that Hemingway was not experiencing suicidal thoughts or

---

[6]  The Commissioner admits that the ALJ's decision was supported by only a "limited record." (Def. Brf. at 11.)

hallucinations, but that she exhibited poor concentration, irritability, nightmares, flashback avoidance, angry outbursts, low energy, and distractibility. (*Id.*) These facts, which appear in the 2010 report, are all facts that the ALJ gleaned from Dr. Obi's later reports to show improvement. But because Dr. Obi's reports are largely unchanged, they contradict and do not support any finding of improvement. *See Thomas F.*, 2020 WL 1443566, at *6 (reversing when "the ALJ's stated reasons for finding medical improvement – normal mental status exams, normal daily activities, and little-to-no mental health treatment – were present in the [previous] record").

Given that there was little change in Dr. Obi's reports, that leaves Hemingway's statement at the hospital as the only support for the ALJ's finding. But that statement alone was not evidence that a reasonable mind would accept as adequate to support a conclusion that there was a decrease in medical severity. *See St. Jean v. Comm'r of Soc. Sec.*, Civ. No. 13-2163, 2013 WL 6858769, at *7 (D.N.J. Dec. 30, 2013) (finding no substantial evidence to support an improvement finding). Moreover, if the ALJ's finding of medical improvement were to hinge on that statement, there would need to be some attempt to compare and reconcile that statement with the record from the prior decision—and there was none.

Put simply, the ALJ barely referred to the 2011 decision, let alone to the evidence supporting that decision. The ALJ's decision read less like a finding of medical improvement, and more like a finding of no disability in the first instance. A more direct, evidence-based, "before-and-after" comparison is needed in continuing disability cases. For those reasons, I will remand for such analysis.[7]

---

[7] The ALJ also did not adequately explain why he found that the disability ended in November 2014. While ALJs may (and sometimes must) estimate a termination date, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009) (recognizing that ALJs have a "zone of choice" for determining a date), the date must have some explanation or basis in the record and cannot be "arbitrary," *Armstrong v. Colvin*, No. 1:13-CV-00430, 2014 WL 5442745, at *15 (M.D. Pa. Oct. 24, 2014) (reversing when the date for medical improvement "appears to be completely arbitrary"). On remand, if

### B. Longitudinal Analysis

The failure to adequately compare the two records led to another deficiency: The ALJ's decision did not situate the limited evidence of Hemingway's improving symptoms longitudinally. The regulations stress that an ALJ should be "careful to consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsenings. Improvement . . . that is only temporary will not warrant a finding of medical improvement." 20 C.F.R. §§ 404.1594(c)(3)(iv), 416.994(c)(3)(iv). In accordance with these regulations, courts have explained that, especially in cases involving mental disorders, the ALJ should consider whether "the noted improvement in [a claimant's] impairment qualified as a temporary remission," *Walters*, 452 F. Supp. 3d at 179, and such remissions may "span[] a couple months to a couple years," *id.* at 180 (collecting cases). In other words, ALJs should not pick out and focus on instances of improvement and thereby "obscure the overall longitudinal picture of [a claimant's] impairment." *Id.*

There seems to have been no longitudinal analysis here. The ALJ relied on a few facts that suggested improvement but did not analyze the larger "picture." *Id.* Had the ALJ done so, the opinion would have had to acknowledge that much of the record remained constant. Indeed, as explained, Dr. Obi's reports were the most probative evidence in both the 2011 and 2019 decisions, yet his observations were notably similar—indeed, identical in many respects. Accordingly, if a proper longitudinal analysis were undertaken, the ALJ would have had to reconcile the more isolated pieces of evidence of improvement (namely the statement at the hospital) with this larger, consistent picture. It may be the case that certain facts support a finding of improvement, but the ALJ must consider them in context, and there is no indication that he did so here.

---

the ALJ again finds that medical improvement has occurred, the ALJ should explain how evidence tends to support the day he chooses.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is vacated and remanded.

A separate order will issue.

Dated: December 23, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**